IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DANA L. JENKINS,
      Petitioner,

v.                              Case No.  5:09cv292/RH/CJK

KENNETH S. TUCKER,[1]
      Respondent.

_____

ORDER, AMENDED REPORT AND RECOMMENDATION

     Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C.
§ 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the
state court record.  (Doc. 14).  Petitioner replied.  (Doc. 16).  On April 4, 2012, the
undersigned issued a Report and Recommendation.  (Doc. 18).  This Amended Report
and Recommendation is submitted following the discovery of a clerical error in the
original Report and Recommendation.[2]  For the sake of clarity, the original Report and
Recommendation shall be vacated and this Amended Report and Recommendation
shall replace the former in full.  Although this Amended Report and Recommendation
does not change the substantive analysis in any way, the parties shall be given

_____

     [1]Kenneth S. Tucker succeeded Walter McNeil and Edwin G. Buss as Secretary of the Florida
Department of Corrections, and is automatically substituted as the respondent. Fed. R. Civ. P. 25(d).

     [2]The original Report and Recommendation incorrectly identified the state court which
convicted and sentenced petitioner as the Circuit Court for Escambia County, Florida, instead of the
Circuit Court for Bay County, Florida.

additional time, fourteen days from <u>today's</u> date, to file objections to this Amended Report and Recommendation pursuant to 28 U.S.C. § 636(b).  It remains the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On January 3, 2006, petitioner was charged by complaint affidavit with one count of Obtaining a Prescription by Fraud and one count of Trafficking in (by Possessing) 28 grams or More of a Controlled Substance (Hydrocodone).  (Doc. 14, Exs. A, B).[3]  On February 28, 2006, the State filed an Information in Bay County Circuit Court Case Number 06-CF-35, charging petitioner with one count of Trafficking in 28 Grams or More of a Controlled Substance (Methamphetamine). (Exs. A, C).  The Information was later amended to correct the identity of the controlled substance to Hydrocodone.  (Ex. D).

On October 4, 2006, petitioner changed his original plea of not guilty to a plea of no contest.  (Ex. E).  After an extensive plea colloquy, the trial court found petitioner's plea freely and voluntarily made and accepted the plea.  (*Id.*).  On March 26, 2007, petitioner filed a counseled Motion to Withdraw Plea under Florida Rule of Criminal Procedure 3.171(g).  (Ex. F).  The trial court denied the motion after a hearing.  (Exs. G, H).  On June 29, 2007, the State filed a Motion to Mitigate Sentence, asking the court to mitigate the 25-year minimum mandatory sentence petitioner faced to a sentence of 15 years imprisonment due to petitioner having

---

[3]Hereafter, all references to exhibits will be to those provided at Doc. 14, unless otherwise noted.

provided substantial assistance to the State.  (Ex. I).  The court held a sentencing hearing, adjudicated petitioner guilty and sentenced petitioner to 15 years imprisonment (without a mandatory minimum), granting the State's motion to mitigate. (Ex. L). Judgment was rendered June 29, 2007.  (Ex. K).  Petitioner did not directly appeal from the judgment.

On November 7, 2007, petitioner filed a *pro se* motion to withdraw his plea. (Ex. M).  The trial court denied the motion as untimely on November 14, 2007.  (Ex. N).  Petitioner did not appeal.

On July 15, 2008, petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. O).  The trial court denied the motion on July 31, 2008.  (Ex. P).  Petitioner did not appeal.

On August 27, 2008, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. Q, pp. 1-17).  The trial court denied the motion without an evidentiary hearing.  (*Id*., pp. 25-27).  On May 22, 2009, the Florida First District Court of Appeal ("First DCA") per curiam affirmed without written opinion. *Jenkins v. State*, 13 So.3d 60 (Fla. 1st DCA 2009) (Table) (copy at Ex. U).  The mandate issued August 11, 2009.  (Ex. X).

Petitioner filed the instant federal habeas petition on August 18, 2009.  (Doc. 1).  The petition presents three grounds for relief:  (1) that petitioner's plea was not knowing and intelligent because (a) petitioner was unaware that he had a viable due process defense based on law enforcement's misconduct and (b) trial counsel was ineffective for failing to seek dismissal of the charge on that basis; (2) that petitioner's plea was not knowing and intelligent because (a) petitioner did not know that the facts could not support a conviction for Trafficking and could only support a conviction for Attempting to Obtain a Controlled Substance by Fraud and (b) trial counsel was

ineffective for failing to advise petitioner accordingly; and (3) that trial counsel was ineffective for failing to investigate a witness and for failing to advise petitioner of the affirmative defense of lack of knowledge of the illicit nature of the substance.  (Doc. 1, pp. 4-26).  Petitioner presented these claims to the state court in his Rule 3.850 proceeding.  Respondent concedes that the petition is timely, but argues that petitioner is not entitled to federal habeas relief because his claims are without merit.

DISCUSSION

Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]  does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737-38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court, however, may "decline to apply a specific legal rule

that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable

application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").   Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739 (11th Cir. 2011).   However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of

the merits of the petitioner's claims.  *See Panetti*, 551 U.S. 930, 127 S. Ct. 2842, 2858.
Even then, the writ will not issue unless the petitioner shows that he is in custody "in
violation of the Constitution or laws and treaties of the United States."  28 U.S.C.
§ 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."
*Richter*, 131 S. Ct. at 786.

Within this framework, the Court will review petitioner's claims.

| Ground 1 | Petitioner's plea was not knowing and intelligent because petitioner was unaware that he had a viable due process defense based on law enforcement's misconduct.  Trial counsel was ineffective for failing to seek dismissal of the charge on that basis. |
|---|---|

The following facts are undisputed.  On November 31, 2005, petitioner walked
into Mullin's Pharmacy in Lynn Haven, Florida, and provided the pharmacy
technician with a fraudulent prescription for 60 Lortab tablets.  The technician
forwarded the prescription to the pharmacist on duty.  The pharmacist asked petitioner
where he obtained the prescription.  After petitioner identified the name of the doctor,
the pharmacist called the doctor.  The doctor's office informed the pharmacist that the
prescription was a forgery and advised the pharmacist to call the police.  The
pharmacist called the Lynn Haven Police Department ("LHPD").  Sergeant Smith with
the LHPD advised the pharmacist to obtain the 60 Lortabs from the pharmacy, fill the
fraudulent prescription and dispense the Lortabs to petitioner.  Smith further advised
the pharmacist that a detective from the Bay County Sheriff's Office would be there
to witness the transaction.  The pharmacist obtained 60 Lortabs, filled the prescription
and allowed petitioner to purchase the Lortabs.  Petitioner was arrested once he was
in possession of the Lortabs.  (Doc. 1, pp. 7-9).   Petitioner asserts that the
pharmacist's act of knowingly filling an invalid prescription violated state and federal
law, and that the pharmacist and law enforcement "unlawfully and objectively

manufactured the crime of Trafficking that would not have existed but for their unlawful act of dispensing the Lortabs to Petitioner." (*Id*., p. 10). Petitioner maintains that law enforcement's conduct (and that of their agent, the pharmacist) was so egregious that it violated his substantive due process rights. (*Id*., pp. 10-11, 18-19) (citing *Rochin v. California*, 342 U.S. 165, 173, 72 S. Ct. 205, 210, 96 L. Ed. 183 (1952), and *Malinski v. New York*, 324 U.S. 401, 416-17, 65 S. Ct. 781, 788-89, 89 L. Ed. 1029 (1945)). Petitioner claims that had he known the pharmacist's and law enforcement's conduct barred his prosecution for Trafficking in Hydrocodone, he would not have entered his plea and would have insisted on going to trial. (Doc. 1, p. 19). Petitioner further asserts that trial counsel was ineffective for failing to seek dismissal of the charge on due process grounds. (*Id*.).

    a.    Clearly Established Federal Law

    A plea of no contest stands on equal footing with a guilty plea in determining its validity. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 129, 71 L. Ed. 347 (1926). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* at 748. The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *Alford*, 400 U.S. at 31, 91 S. Ct. 160; *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The assistance of counsel received by a defendant is relevant to the question of whether

a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding.  *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970).

When a petitioner challenges the validity of his plea on allegations of ineffective assistance of counsel, the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies.  *Hill v. Lockhart*, 474 U.S. 52, 57-58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see also Missouri v. Frye*, No. 10-444, — S. Ct. —, 2012 WL 932020, at \*5 (U.S. Mar. 21, 2012) ("[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*.").  To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

The focus of inquiry under the performance prong of *Strickland* is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill*, 474 U.S. at 56–57 (quoting *McMann v. Richardson*, 397 U.S. at 771).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland* at 689.  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  *Stano v. Dugger*, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably

professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of *Strickland* in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. While counsel can be deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must also demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

    b.    Federal Review of State Court Decision

Petitioner presented this claim to the state courts as Ground 1 of his Rule 3.850 motion. The Rule 3.850 court denied relief as follows:

> In Ground 1, it appears that the Defendant is arguing that the pharmacist who filled the prescription committed an illegal act in doing

so.  Defendant appears to argue that, once the pharmacist called the doctor and confirmed that the prescription was fraudulent, it was illegal for him to fill it, even at the request of police.  The Defendant claims that the pharmacist, acting as an agent of law enforcement, committed an illegal act.  It appears that the Defendant is attempting to raise an objective entrapment defense, alleging that the conduct of the law enforcement officials in this case and the pharmacist, acting as their agent, was so egregious that it violated his due process rights.  *See Munoz v. State*, 629 So.2d 90 (Fla. 1993).  *Munoz* cites to *State v. Williams*, 623 So.2d 462 (Fla. 1993) as an example for evaluating objective entrapment.  This is also the Florida case that the Defendant relies upon in his motion.  However, in *Williams*, the police actually manufactured crack cocaine for use in a reverse-sting operation against the Defendant, by converting powder cocaine into crack cocaine.  The *Williams* court distinguished other cases where the police simply delivered illegal substances, such as marijuana, to a defendant as part of a reverse-sting operation, stating that delivery of a controlled substance by government agents in a reverse-sting operation did not constitute entrapment as a matter of law.  It was the illegal manufacture of a controlled substance by police officers that offended due process considerations.  In the instant case, the police and the pharmacist did not manufacture an illgal substance.   The pharmacist simply filled a prescription for a substance which, with a doctor's prescription, is legal to obtain.

(Ex. Q, pp. 25-26).  The state appellate court summarily affirmed the denial of relief.

Respondent argues that the state court properly denied relief and that petitioner's assertion that he had an entrapment defense is without merit, because petitioner was predisposed to commit the offense.  (Doc. 14).  Petitioner replies that the analysis of his claim should focus on law enforcement's (and the pharmacist's) illegal and egregious conduct, not his predisposition.  (Doc. 1, pp. 10-11 ¶¶ 16-20; *see also* Doc. 16, p. 2 ¶ 2 ("Respondent's response does not address the illegal acts of the pharmacist, who had become a state agent by taking directions from the police to fill

the fraudulent prescription.   Instead, Respondent shifts the focus to Petitioner's predisposition to commit the crime, thereby excusing the pharmacist's illegal acts.").

Petitioner's reply goes on to allege:

> Petitioner states that he did not know the prescription was fraudulent when he took it to the pharmacy.  Upon his arrest, the police induced him to say that he knew it was fraudulent with the promise, if he state [sic] he knew, of immediate release.  It was only then did Petitioner state he knew it was fraudulent, and he was released form custody as a result.
>
> Petitioner submits that because of his lack of knowledge that the prescription was fraudulent, Respondent's predisposition argument must fail. . . .
>
> When Petitioner entered the pharmacy he was an "unwary innocent," believing the prescription was valid.  As such, the actions of the state agent pharmacist in creating the crime of trafficking violated Petitioner's Fourteenth Amendment right to Due Process and trial counsel was ineffective in failing to raise the due process violation in the trial court.

(Doc. 16, p. 2 ¶ 3).

Petitioner's allegation that he did not know the prescription was fraudulent is a new assertion made for the first time in his reply.  To the extent the assertion is relevant to any issue raised here, the Court will  not consider it for two reasons.  First, petitioner previously acknowledged in state court and here that he knew the prescription was fraudulent.  (Doc. 1, p. 11 ¶ 19 and Doc. 14, Ex. Q, Rule 3.850 motion at p. 5 ("Petitioner clearly contends that he is in no way defending his conduct of 'attempting to obtain a controlled substance by fraud.'  In fact, he contends that it is reprehensible.  What he does defend i[s] hi[s] right to Due Process which prohibits the government from obtaining convictions 'brought about by methods that offend a

sense of justice.'  See, Rochin v. California, 342 U.S. 165, 173, 72 S.Ct. 205, 210 (1952)."); *see also* Doc. 1, p. 25 ¶ 11 and Doc. 14, Ex. Q, Rule 3.850 motion at p. 15 (explaining that petitioner and "Pete" agreed that Pete would forge the prescription for 60 Lortabs, that petitioner would submit the forged prescription, and that the two would then split the 60 Lortabs); Doc. 14, Ex. S, Rule 3.850 initial appeal brief at p. 9 (admitting to the state appellate court that "Mr. Jenkins was attempting to possess legal drugs illegally by way of fraud.")).  Second, this Court must confine its review under § 2254(d) to the record before the state court, and petitioner did not present this allegation concerning lack of predisposition to the state court.  *See Cullen Pinholster*, 563 U.S. —, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *Borden v. Allen*, 646 F.3d 785, 816-17 (11th Cir. 2011) (holding that in reviewing a claim under § 2254(d)(1), the federal court is confined to the allegations made in the prisoner's state court pleading;  "Logically, [the state] court could only undertake an 'adjudication of the claim' that was presented to it; we believe that a review of a state court adjudication on the merits in light of allegations not presented to the state court – for example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition – would insufficiently respect the 'historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts.'") (citing *Powell v. Allen*, 602 F.3d 1263 (11th Cir. 2010)).  Reviewing petitioner's claim in light of the record before the state court, petitioner is not entitled to federal habeas relief.

The Supreme Court has declined to recognize the existence of a due process defense grounded in the United States Constitution that focuses solely on the government's alleged misconduct without regard to the defendant's predisposition.

In  *United States v. Russell*, 411 U.S. 423, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973), a defendant was charged with unlawfully manufacturing methamphetamine and unlawfully selling and delivering that drug.  411 U.S. at 424, 93 S. Ct. at 1639.  The defendant went to trial and asserted the statutory defense of entrapment.  *Id*.  On appeal, the defendant conceded that the jury could have found him predisposed to commit the offenses, but argued that on the facts presented, there was entrapment as a matter of law.  *Id*. at 427, 93 S. Ct. at 1640.  The Ninth Circuit reversed the conviction for the reason that the undercover agent investigating the defendant had supplied an essential chemical (propanone) for manufacturing the methamphetamine. The Ninth Circuit concluded that as a matter of law "a defense to a criminal charge may be founded upon an intolerable degree of governmental participation in the criminal enterprise."  *United States v. Russell*, 459 F.2d 671 (9th Cir. 1972).  The Supreme Court reversed, holding that the Ninth Circuit "in effect expanded the traditional notion of entrapment, which focuses on the predisposition of the defendant, to mandate dismissal of a criminal prosecution whenever the court determines that there has been 'an intolerable degree of governmental participation in the criminal enterprise.'"  *Russell*, 411 U.S. at 427, 93 S. Ct. at 1640.  The Supreme Court rejected the defendant's invitation to "reconsider the theory of the entrapment defense" by making the defense "rest on constitutional grounds," and rejected the defendant's argument that the same factors which led the Court to apply the exclusionary rule to illegal searches and seizures (such as in *Rochin, supra*) and confessions (such as *Malinski*, *supra*) should lead the Court to bar prosecutions "because of the police involvement in criminal activity."  *Id*. at 430, 93 S. Ct. at 1642.  The Court stated that "[t]he analogy is imperfect," because the "the principal reason behind the adoption of the exclusionary rule was the Government's 'failure to observe its own laws,'"

whereas the government's conduct in *Russell* "violated no independent constitutional right of the respondent.  Nor did [the law enforcement officer] violate any federal statute or rule or commit any crime in infiltrating the respondent's drug enterprise." *Id.* at 430, 93 S. Ct. at 1642.  The Court noted:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, *cf. Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the instant case is distinctly not of that breed.  [The law enforcement agent's] contribution of propanone to the criminal enterprise already in process was scarcely objectionable. The chemical is by itself a harmless substance and its possession is legal. While the Government may have been seeking to make it more difficult for drug rings, such as that of which respondent was a member, to obtain the chemical, the evidence . . . shows that it nonetheless was obtainable. The law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment.  *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246, 80 S.Ct. 297, 304, 4 L.Ed.2d 268 (1960).

*Russell*, 411 U.S. at 431-32, 93 S. Ct. at 1643.

Three years later, in *Hampton v. United States*, 425 U.S. 484, 96 S. Ct. 1646, 48 L. Ed. 2d 113 (1976), a defendant again argued to the Court that the government's allegedly egregious conduct (supplying a government informant with heroin which the defendant then sold to an undercover government agent) violated the defendant's due process rights and provided an absolute bar to his prosecution, regardless of his predisposition to commit the crime.  *Id.*, 425 U.S. at 488-89, 96 S. Ct. at 1649-50. The Supreme Court again rejected the defendant's invitation to create a new, constitutionally-based defense based on the government agent's acts, and held that "[t]he remedy of the criminal defendant with respect to the acts of Government agents,

which, far from being resisted, are encouraged by him, lies solely in the defense of entrapment." *Id.*, 425 U.S. at 490, 96 S. Ct. at 1650.  The Court said:

> The limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the Defendant. . . .  If the result of the governmental activity is to "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission . . .," *Sorrells, supra*, 287 U.S., at 442, 53 S. Ct., at 212, 77 L.Ed., at 417, the defendant is protected by the defense of entrapment.  If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law.  *See O'Shea v. Littleton*, 414 U.S. 488, 503, 94 S. Ct. 669, 679, 38 L. Ed.2d 674, 687 (1974); *Imbler v. Pachtman*, 424 U.S. 409, pp. 428-429, 96 S. Ct. 984, 994, 47 L. Ed. 2d 128, 142-143 (1976).  But the police conduct here no more deprived defendant of any right secured to him by the United States Constitution than did the police conduct in *Russell* deprive Russell of any rights.

*Hampton*, 425 U.S. at 490-91, 96 S. Ct. at 1650 (citing *Sorrells v. United States*, 287 U.S. 435, 53 S. Ct. 210, 77 L. Ed. 413 (1932)).

The government's conduct in petitioner's case, like that in *Russell* and *Hampton*, consisted of law enforcement enabling petitioner to commit the criminal conduct he set out to commit prior to law enforcement's involvement.  The pharmacist's filling of the fraudulent prescription did not deprive petitioner of any right secured to him by the United States Constitution.  As petitioner had no constitutionally-based due process defense (one focused solely on law enforcement's misconduct without regard to petitioner's predisposition), petitioner's lack of awareness of such a defense could have no effect on the validity of his plea.

Petitioner's claim also fails to the extent petitioner claims his plea was unknowing because he was not aware he could assert a due process defense based on

state law.  Although Florida law recognizes a government misconduct defense based on the due process clause of the Florida Constitution, *see State v. Williams*, 623 So.2d 462 (Fla. 1993), the state courts in petitioner's case concluded that petitioner's claim relied on an erroneous interpretation of *Williams*, and rejected the claim.  Petitioner's argument that the state courts unreasonably applied Supreme Court law with regard to the validity of a no contest plea obviously depends upon this Court determining that petitioner's plea was entered without a full awareness of this state-law defense,  but first this Court would have to conclude that the state courts misinterpreted state law, i.e., misinterpreted *State v. Williams*, 623 So.2d 462 (Fla. 1993).  This Court will not second-guess the state courts on such matters.  *See  Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.");  *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

The Florida state courts have already told this Court how the issue would have been resolved under state law had petitioner asserted a state-law due process defense based on government misconduct – the defense would have been rejected.  The state courts' binding determination of Florida law means that petitioner's lack of awareness of that defense had no effect on the validity of petitioner's plea.

As to petitioner's related claim of ineffective assistance, the fact that petitioner

did not have a viable argument under federal or state law for dismissal of the Trafficking charge on the basis of law enforcement's alleged misconduct precludes relief on petitioner's claim that counsel was ineffective for failing to seek dismissal of the charge on that basis.  *See Hill v. Lockhart*, 474 U.S. at 59, 106 S. Ct. at 371 ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."); *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."); *see also Callahan v. Campbell*,427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [defense counsel] objected to the introduction of [the petitioner's] statements based on [state law] – the objection would have been overruled.  Therefore, [defense counsel] was not ineffective for failing to make that objection.") (citations omitted); *Herring*, 397 F.3d at 1354-55 (same; rejecting ineffective assistance claim complaining of counsel's failure to make an objection, based on state law, to the introduction of certain evidence, where the Florida Supreme Court had already concluded that the objection would have been overruled).

　　　The state courts' rejection of petitioner's claim was not contrary to clearly established Supreme Court precedent, did not involve an unreasonable application of clearly established Supreme Court precedent, and was not based on an unreasonable

determination of the facts in light of the record before the state court.  Petitioner is not entitled to federal habeas relief.

<u>Ground 2</u>    <u>Petitioner's plea was not knowing and intelligent because petitioner was unaware that the facts supported only a conviction for Attempting To Obtain A Controlled Substance By Fraud (a third degree felony) and not a conviction for Trafficking by Possession (a first degree felony).  Trial counsel was ineffective for failing to advise petitioner accordingly.</u>

Petitioner relies on the same facts and argument presented in Ground 1 to argue here that his plea was entered without a full understanding of the nature of the charge and the consequences of the plea, because petitioner was unaware that law enforcement's misconduct barred his prosecution for Trafficking and that absent the misconduct, the only charge for which he could be convicted was Attempting to Obtain a Controlled Substance by Fraud.  Petitioner faults counsel for failing to advise him accordingly.  (Doc. 1, pp. 20-23).

a.    Clearly Established Federal Law

The clearly established Federal law governing the validity of a guilty or no contest plea, including claims of ineffective assistance with regard to that plea, is set forth above.

b.    Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 proceeding.  The Rule 3.850 court denied relief as follows:

Next, in Ground 2, the Defendant claims that his plea was involuntarily entered because he did not understand that the actions of the police and the pharmacist were illegal.  He claims that his counsel was ineffective for failing to advise him of the possibility of an affirmative defense.  For the reasons set forth in Ground 1, the Defendant's argument is without merit, as entrapment would not have been a viable defense.

(Doc. 14, Ex. Q, p. 26).  The state appellate court summarily affirmed.

Petitioner's underlying premise for this claim is the same as Ground 1:  that law enforcement's misconduct barred petitioner's prosecution for Trafficking in Hydrocodone and that petitioner's ignorance of this "fact," rendered his plea invalid. Petitioner's Ground 2 fails for the same reasons as Ground 1.  The government's conduct did not invoke a viable due process defense or preclude petitioner's conviction for Trafficking in Hydrocodone.  Thus, petitioner's lack of unawareness of such a defense is of no consequence to the validity of petitioner's plea or the effectiveness of counsel's representation during the plea process.

The state courts' rejection of petitioner's claim was not contrary to clearly established Supreme Court precedent, did not involve an unreasonable application of clearly established Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the record before the state court.  Petitioner is not entitled to federal habeas relief.

Ground 3    Trial counsel was ineffective for failing to investigate a witness and for failing to advise petitioner of the affirmative defense of lack of knowledge of the illicit nature of the substance.

Florida law provides for an affirmative defense to the charge of Trafficking in a Controlled Substance where the defendant did not know of the illicit nature of the substance.  Fla. Stat. § 893.101(2).  Petitioner asserts that trial counsel did not inform him of this affirmative defense and that had he done so petitioner would have insisted on going to trial because:  (1) there was no evidence that petitioner knew  Lortab contained Hydrocodone, and (2) "the prescription on Petitioner's case was not even filled out by the Petitioner but was filled out by an individual 'know only as Pete.'" (Doc. 1, p. 24 ¶¶ 7-8).  Petitioner alleges that he "apprised counsel of Pete, Pete's

address, an overall description of Pete, Pete's automobile, and how Pete could be located." (*Id*., p. 24 ¶ 9). Petitioner complains that "[a]dequate pretrial investigation of Pete and calling of hand writing experts . . . would have confirmed:  that Pete was the individual who filled out the phony prescription for 60 Lortabs as would be evidenced by his handwriting and fingerprints reflected on the phony RX in the instant case, ultimately resulting in formal charges being filed against him." (*Id*., pp. 24-25 ¶ 10). Petitioner argues that Pete could have testified not only that it was he who forged the prescription, but also that "he befriended Petitioner into believing that 'Lortab is like Valium'. . . . " (*Id*., p. 25 ¶ 11).

      a.      Clearly Established Federal Law

The clearly established Federal law governing challenges to the validity of a guilty or no contest plea based on a claim of ineffective assistance of counsel is set forth above.

      b.      Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 proceeding.  The Rule 3.850 court denied relief as follows:

> Finally, in Ground 3, the Defendant claims that his counsel was ineffective for failing to interview a witness, described only as "Pete," who the Defendant claims actually filled out the fraudulent prescription. He claims that he provided counsel with Pete's address, description, a description of his vehicle, and how he could be located.  He asserts that Pete was available for trial and would have testified that it was Pete who filled out the prescription for the 60 Lortabs.  However, the Defendant also admits in his motion that he knew the prescription was fraudulent and that he and Pete agreed that they would split the prescription if the Defendant submitted it.   Thus, Pete's testimony would not have exonerated the Defendant.  At most, it would have also implicated Pete in the crime.

(Doc. 14, Ex. Q, p. 26).  The state appellate court summarily affirmed the denial of relief.

"The reasonableness of a trial counsel's acts, including lack of investigation . . ., depends critically upon what information the client communicated to counsel." *Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) (en banc) (internal quotation marks omitted); *see also Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1325 (11th Cir. 2002) ("Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate."). According to petitioner's allegations, the information petitioner relayed to counsel was that Pete was the one who forged the prescription.  This information merely implicated Pete -- it did not arguably suggest that petitioner did not know of the illicit nature of the substance he obtained with the forged prescription.  As petitioner's allegations fail to establish that counsel was aware of facts which would put a reasonable attorney on notice of a possible defense under Fla. Stat. § 893.101, the state court's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of

a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Therefore, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.  The original Report and Recommendation (doc. 18) is vacated, and this Amended Report and Recommendation replaces the former in full.

2.  The clerk shall change the docket to reflect that Kenneth S. Tucker has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Dana Lynn Jenkins* in the Circuit Court for Bay County, Florida, Case No. 06-CF-35 be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 9th day of April, 2012.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).